SECOND DIVISION
MARCH 31, 2011

1-09-3550

| | | |
|---|---|---|
| JEANINE SEITZ-PARTRIDGE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 L12349 |
| | ) | |
| LOYOLA UNIVERSITY OF CHICAGO, ALAN WOLFE, | ) | Honorable |
| ADAM DRIKS, ALLEN FRANKFATER, GAYATRI | ) | Allen S. Goldberg |
| VEDANTAM and DAVID KEATING, | ) | and |
| | ) | Daniel J. Pierce, |
| Defendants-Appellees. | ) | Judges Presiding. |

PRESIDING JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. Justices Karnezis and Harris concurred in the judgment and opinion.

**OPINION**

The plaintiff, Jeanine Seitz-Partridge, initiated this lawsuit in 2003 in the circuit court of Cook County seeking injunctive relief and damages against the defendant, Loyola University of Chicago[1] (Loyola) and individual faculty members of the school. The plaintiff alleged she was wrongfully denied advancement into Loyola's molecular biology Ph.D. program. In February 2006, the trial court granted the defendants' motion to dismiss counts III and IV of the plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (the Code). 735 ILCS 5/2-615 (West 2004). Count III alleged tortious interference by the individual defendants with the contract between the plaintiff and Loyola; and count IV alleged defamation *per se* against the plaintiff by the individual defendants.

---

[1]The plaintiff's original complaint named Stritch School of Medicine as a defendant. In 2005, the trial court granted the defendants' uncontested motion to dismiss the school from the lawsuit.

1-09-3550

At that time, the trial court also granted the defendants' motion to strike the plaintiff's request for injunctive relief. The dismissal of those two counts, as well as the denial of injunctive relief, remained in effect for the duration of the pendency of the case.

On December 8, 2009, the trial court granted summary judgment for the defendants on the following: count I, which alleged breach of an express contract between the plaintiff and Loyola; count II, which alleged breach of an implied contract between the plaintiff and Loyola; and count V, which alleged defamation *per quod* by the individual defendants. The trial court denied, as moot, the plaintiff's motion to reconsider the trial court's order dismissing her request for injunctive relief. The court further denied the plaintiff's motion for leave to file a sixth amended complaint. This action disposed of the plaintiff's case in its entirety. On December 21, 2009, the plaintiff filed a timely appeal of the December 8, 2009, order and all prior orders striking or dismissing all counts of her fifth amended complaint. Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008).

On appeal, the plaintiff raises the following issues: (1) whether the trial court improperly granted the defendants' motion for summary judgment on the action for breach of contract; (2) whether the trial court abused its discretion in denying leave to file a sixth amended complaint; (3) whether the trial court improperly denied the motion to reconsider its dismissal of the request for injunctive relief; and (4) whether the trial court erred in dismissing the count which alleged defamation *per se*.

For the reasons that follow, we affirm in part, reverse in part and remand the case to the circuit court of Cook County.

2

BACKGROUND

The record contains the following facts and allegations. The plaintiff enrolled in Loyola's highly selective molecular biology program in July 2000. She was awarded a graduate tuition fellowship and a position as a graduate assistant for which she was paid a stipend. The graduate assistant position was part of a class entitled "Thesis Research." The plaintiff was a member of Dr. Alan Wolfe's research staff, and Wolfe was her mentor and advisor in the program.

In order to continue in the program as a Ph.D. candidate, the plaintiff needed to pass a preliminary examination by the end of her second year in the program. This examination required the plaintiff to write a grant proposal and present an oral defense of her proposal to a committee made up of the defendants Drs. Wolfe, Adam Driks, David Keating, Gayatri Vedantam and the committee chair, Allen Frankfater (known collectively as the Preliminary Examination Committee, or PEC). According to Loyola's written guidelines for the program, a student should take a course entitled "Research Ethics" by the end of the student's second spring semester. Relying on Wolfe's advice, the plaintiff deferred taking this class and had not taken it prior to her work on her grant proposal.

On or about May 28, 2002, the plaintiff was given a topic for her preliminary examination by the PEC. She prepared an abstract and specific aims of her grant proposal which the PEC approved on July 18, 2002. The plaintiff submitted her written grant proposal in August 2002 and gave her oral defense of the proposal on September 9, 2002. At the conclusion of the oral defense, the members of the PEC privately deliberated. Professor Frankfater then verbally told the plaintiff, in the presence of the full PEC, that she passed the oral examination; that she passed the first part, or "Aim 1" of her written examination; and that she conditionally passed "Aim 2" but she needed to revise that part of

the proposal. The plaintiff alleged that, contrary to the requirements in Loyola's guidelines, she never received a written evaluation of her grant proposal at the time of her oral defense, nor a written summary of the PEC's meeting held after her oral defense.

The plaintiff subsequently revised the "Aim 2" section of her grant proposal with Wolfe's aid and submitted it to the PEC. Wolfe's later deposition statements indicated that four out of the five PEC members told him verbally that they would vote affirmatively to pass the plaintiff. Before the vote to pass the plaintiff was official, Professor Vedantam, a member of the PEC, accused the plaintiff of plagiarism, and the other members of the PEC reversed their opinions about passing the plaintiff. A written critique of the plaintiff's preliminary examination was prepared by the PEC and given to the program's steering committee in charge of student discipline. The PEC did not determine whether the plaintiff's plagiarism conduct was intentional.

In her complaint filed in the circuit court of Cook County, the plaintiff alleged that the PEC's critique contained fabricated statements which misled the steering committee into believing that the plaintiff's work was subpar and that she would have failed her preliminary examination even without the plagiarism charge. The plaintiff alleged that the reason the PEC sent the critique to the steering committee was to make a permanent record of the allegations of plagiarism. The steering committee had the authority to overrule the PEC and could have given the plaintiff a passing grade or directed that she rewrite the portions of her work that were allegedly plagiarized.

However, the steering committee agreed with the PEC that the plaintiff had committed plagiarism according to Loyola's definition. No determination was made by the steering committee as to whether the plaintiff plagiarized with the intent to deceive. The steering committee also agreed

with the PEC's conclusion that because of the plagiarism, it was impossible to determine whether the plaintiff understood the material.

It was explained to the plaintiff that according to the guidelines of the program, she had the opportunity to take a second preliminary examination on a different question to determine her eligibility to continue in the Ph.D. program. If she failed the second examination, she would be dismissed from the Ph.D. program. The plaintiff then took a second preliminary examination. After review, the PEC determined that plaintiff failed both the written and the oral portions of her second preliminary examination. The members of the PEC sent their individual critiques of the plaintiff's examination to the steering committee. The steering committee independently reviewed the materials and unanimously agreed with the conclusions of the PEC. The associate dean of the graduate school reviewed the steering committee's recommendation and conducted his own independent review. On March 27, 2003, the associate dean informed the plaintiff that she was dismissed from the Ph.D. program. The plaintiff does not allege any wrongful conduct on the part of the defendants regarding the results of her second failed preliminary examination.

The plaintiff appealed to the school's hearing board pursuant to Loyola's academic grievance procedure. The hearing board consisted of two Loyola professors and one Loyola Ph.D. student whom the plaintiff did not know. The board heard testimony from the plaintiff and several of the professors involved in the plaintiff's review. On May 28, 2003, the board upheld the decision to dismiss the plaintiff from the program.

The plaintiff appealed the hearing board's decision to the associate vice president for research, who was also the dean of the graduate school. The plaintiff submitted documents prepared with the

aid of her legal counsel. The dean confirmed the hearing board's decision. The plaintiff then pursued the third level of review conducted by Loyola's vice president for health services. Again, she submitted documents prepared by her legal counsel. On August 19, 2003, the vice president upheld the decision to dismiss the plaintiff from the program.

In October 2003, the plaintiff brought this lawsuit in the circuit court of Cook County. The plaintiff filed a fourth amended complaint in May 2005. The defendants filed a motion pursuant to section 2-615 of the Code to strike the complaint for failure to state a cause of action. On September 13, 2005, the trial court dismissed, without prejudice, count III of the fourth amended complaint which alleged tortious interference with a contractual relationship, and count IV which alleged defamation *per se*. In that same ruling, the trial court denied the plaintiff's request for injunctive relief. However, the trial court also denied the defendants' motion to strike count V, which alleged defamation *per quod*.

The plaintiff subsequently filed a fifth amended complaint on October 5, 2005, in which she alleged the following five causes of action: (I) breach of express contract; (II) breach of implied-in-fact contract; (III) tortious interference with contractual relationship by the individual professor defendants; (IV) defamation *per se* by the individual professor defendants; and (V) defamation *per quod* by the individual professor defendants. In her prayer for relief in the fifth amended complaint, the plaintiff asked: that the university expunge her record of failure on the preliminary examination and all allegations of plagiarism; that her student record be amended to reflect a passing grade on her

first preliminary examination; that the university confer a master's degree in molecular biology[2] upon her; that she be reinstated in the Ph.D. program; that she be awarded monetary compensation for all consequential damages which she sustained as a result of the alleged contractual breaches; that she be awarded prejudgment interest and costs; and any other equitable relief that the court deemed just. The plaintiff requested compensatory damages for pain, suffering, humiliation, lost academic and professional opportunities and lost past and future income resulting from her alleged defamation claims.

On February 10, 2006, the trial court granted the defendants' section 2-615 motion to dismiss, with prejudice, the plaintiff's count for tortious interference with contractual relationship, (count III), and the count for defamation *per se* (count IV) of the plaintiff's fifth amended complaint. At that time, the trial court also granted the defendants' motion to strike the plaintiff's request for injunctive relief. The trial court stated in striking the request for injunctive relief that the plaintiff "can preserve those rights for appeal." The plaintiff then retained different counsel, who conducted further depositions of various Loyola professors. The plaintiff subsequently filed a motion for partial summary judgment on her request for injunctive relief, a motion to reconsider the trial court's prior order striking her request for injunctive relief and a motion for leave to file a sixth amended complaint.

On December 8, 2009, six years after the plaintiff's initial complaint was filed, a newly

---

[2]As of May 2005, the plaintiff had received a master of science degree from Loyola's biology program. Beginning in the fall of 2004, she was employed by Loyola in numerous positions, such as biology teaching assistant, biology instructor and nursing tutor.

assigned judge[3] granted the defendants' motion for summary judgment (735 ILCS 5/2-1005 (West 2008)), on count I (breach of express contract), count II (breach of implied contract) and count V (defamation *per quod*) of the plaintiff's fifth amended complaint; denied, as moot, the plaintiff's motion for partial summary judgment on three questions of law; denied, as moot, the plaintiff's motion to reconsider a previous order striking her request for injunctive relief; and denied the plaintiff's request for leave to file a sixth amended complaint. On December 21, 2009, the plaintiff filed an appeal from the trial court's order of December 8, 2009, in which she stated that she was appealing: "[a]ll orders striking or dismissing complaints filed by the plaintiff," including the "February 2, [*sic*] 2006," order (dismissing the tortious interference with a contractual relationship claim, the defamation *per se* claim and striking the request for injunctive relief in the plaintiff's fifth amended complaint); the "September 9, [*sic*] 2005," order (dismissing the tortious interference with a contractual relationship claim, the defamation *per se* claim and striking the request for injunctive relief in the plaintiff's fourth amended complaint); the "April 21, 2005," order (dismissing the breach of implied contract count, the tortious interference with a contractual relationship count, and the defamation *per se* count of the plaintiff's third amended complaint); and "[a]ll orders related to or deriving from the aforesaid orders."

ANALYSIS

The appeal before this court concerns the plaintiff's fifth amended complaint. We first consider the issue of whether the trial court erred in granting summary judgment in favor of Loyola

---

[3]The trial judge who had presided in the case from its inception was Judge Goldberg, but Judge Pierce was then substituted at this point in the proceedings.

on the plaintiff's counts for breach of express or implied contracts (counts I and II). A reviewing court uses a *de novo* standard when examining a trial court's grant of summary judgment. *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 106, 879 N.E.2d 305, 308 (2007). Summary judgment is appropriate only if the pleadings, depositions and affidavits in the record, when viewed most favorably to the non-movant, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008); *Hall v. Henn*, 208 Ill. 2d 325, 328, 802 N.E.2d 797, 798 (2003).

The plaintiff contends that a university's written catalogs and handbooks create an enforceable contractual relationship with its students. *Harris v. Adler School of Professional Psychology*, 309 Ill. App. 3d 856, 859, 723 N.E.2d 717, 720 (1999). While the defendants agree that a student's relationship with a university has contractual components, they point out that our courts have traditionally treated students' contractual claims against schools differently than typical breach of contract claims. *Bilut v. Northwestern University*, 269 Ill. App. 3d 125, 133, 645 N.E.2d 536, 541 (1994). A court will not review a teacher's subjective academic decision, but will review "whether school authorities acted arbitrarily or capriciously in their treatment of a student, including dismissal." *Harris*, 309 Ill. App. 3d at 859, 723 N.E.2d at 720. A student has a valid cause of action against a school when it is alleged that an adverse decision against a student "supposedly for academic deficiencies, was made arbitrarily, capriciously, and in bad faith." *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 156, 698 N.E.2d 257, 266 (1998). It has been held that in stating a cause of action for breach of contract against a school, the plaintiff has the heavy burden of showing that the plaintiff's dismissal was " 'without any discernible

9

rational basis.' " *Frederick v. Northwestern University Dental School*, 247 Ill. App. 3d 464, 472, 617 N.E.2d 382, 387 (1993) (quoting *Holert v. University of Chicago*, 751 F. Supp. 1294, 1301 (N. D. Ill. 1990)).

The plaintiff in the case before us argues that she sufficiently alleged a cause of action for breach of contract and presented sufficient evidence of the individual defendants' intentional wrongdoing. She alleges that the plagiarism accusation against her was false and resulted in the PEC giving her a failing grade on her first preliminary examination. She also argues that Professor Frankfater, of the PEC, falsely told the head of the steering committee, prior to the steering committee's decision, that the plaintiff would have failed the first preliminary examination independent of the plagiarism issue. Further, the plaintiff claims that the PEC's critique of her performance on the first examination was replete with misrepresentations, including criticisms of aspects of her first examination that the PEC had already found to be of passing quality. She claims that this false information was then relayed to the steering committee without mention that the PEC had concluded that she had a passing grade before they were informed of the plagiarism. According to the plaintiff, the steering committee upheld the decision to fail her because of the alleged misinformation provided to it. This resulted in requiring her to take a second preliminary examination, which she acknowledged that she did not pass. The plaintiff argues that had her first examination been evaluated without the misrepresentations, she would never have been required to take a second preliminary examination and she would have advanced in the program as a Ph.D. candidate.

The plaintiff alleges that the individual professor defendants did not follow Loyola's

guidelines, which is further proof of their arbitrary and capricious conduct. The department guidelines state that students are "expected to complete" 25 hours of coursework, including a research ethics class, by the end of their second year in the program. The plaintiff states that the ethics course "formally taught plagiarism issues." The common practice, however, was that the students deferred this course until their third year of graduate study. The defendants contend that the university's guidelines do not create a contractual obligation to ensure that students complete courses by a particular time or receive feedback in a certain way. The plaintiff argues that she should have been given written feedback on her first preliminary examination. The defendants allege, however, that it was common practice that only oral feedback was given to students at that point in the review process.

The plaintiff highlights the fact that Loyola's definition of the term "plagiarism" was listed in its handbook in the section entitled "Statement on Academic Honesty." The subheadings where the definition is found are labeled "Academic Honesty" and "Boundaries of Academic Honesty." The pertinent sections of Loyola's handbook states:

> "Papers. Plagiarism is the appropriation for gain of ideas, language or work of another without sufficient public acknowledgment that the material is not one's own. The following acts are regarded as such violations:
>
> • Submitting another person's unpublished work or examination as one's own;
>
> • Submitting a rewritten or paraphrased version of another

11

person's work ***."

The plaintiff argues that by applying the plain meaning of the words, and taking into account the definitions's location in Loyola's handbook, the definition requires a finding of a student's intentional dishonesty in order to be characterized as plagiarism. Both the plaintiff and the defendants acknowledge that the members of the PEC and steering committee did not conclude whether the plaintiff had intentionally plagiarized. The plaintiff argues that this is additional evidence of the individual defendants' arbitrary and capricious conduct because she was erroneously accused of plagiarism without what she alleges is a necessary finding of intent.

The defendants argued, and the trial court agreed, that the definition of plagiarism in Loyola's handbook was not ambiguous and did not require a student's dishonest intent. It must be noted that both the PEC and the steering committee affirmed the conclusion that the plaintiff had committed plagiarism. It should be further noted that the professors on the committees were experienced academics who were well aware of Loyola's definition of the term. The defendant professor Frankfater stated in his affidavit:

"The PEC determined that not merely phrases, but substantial portions of paragraphs were copied without quotation marks and sometimes without attribution. *** The PEC made no finding with regard to whether [the plaintiff's] plagiarism was intentional. The PEC also concluded that [the plaintiff's] conduct raised serious concerns as to whether [she] actually understood the topic she was writing about."

12

According to the plaintiff, Frankfater's statement illustrates that the professors used the acts of plagiarism as part of their questioning of the plaintiff's knowledge of the subject matter.

In granting the defendants' motion for summary judgment on the breach of contract counts, the trial court relied on the reasoning in the *Bilut* case which concerned a Ph.D. candidate's breach of contract lawsuit against a private university. The court in the *Bilut* case reasoned:

> "A private educational institution such as defendant sustains essentially voluntary relationships among itself, its students and its faculty. The foundation of these relationships is the understanding that the students will abide by and adhere to the disciplinary regulations and the academic standards established by the faculty and the university ***. *** To this end, we believe that private colleges and universities must be accorded a generous measure of independence and autonomy with respect to the establishment, maintenance and enforcement of academic standards." *Bilut*, 269 Ill. App. 3d at 134, 645 N.E.2d at 542.

The trial court in the instant case noted that, based upon its review of the evidence, the plaintiff had not alleged sufficient facts to show that the defendants had acted arbitrarily, capriciously or in bad faith.

There have been numerous cases where Illinois courts have considered and rejected arguments based upon breach of contract counts because there was no evidence of arbitrary, capricious or bad-faith conduct toward a dismissed student. See, *e.g., Raethz v. Aurora University*, 346 Ill. App. 3d

728, 733-34, 805 N.E.2d 696, 700-01 (2004) (where the appellate court reversed a judgment for plaintiff who had been dismissed from a graduate program, finding that the university was not liable for breach of contract because there was no evidence of arbitrary, capricious or bad-faith conduct on its part); *Bilut*, 269 Ill. App. 3d at 136, 645 N.E.2d at 543 (where an unsuccessful Ph.D. candidate's grant of injunctive relief in a breach of contract lawsuit was reversed because the appellate court determined the plaintiff failed to prove that the private university had acted in an arbitrary and capricious manner and had based its decision on anything other than academic grounds); *Frederick*, 247 Ill. App. 3d at 474, 617 N.E.2d at 389 (where the court concluded that a dental student's dismissal was not a result of arbitrary, capricious, bad-faith or discriminatory conduct on the part of the private school).

The plaintiff here has not provided sufficient facts to show that the professors named as individual defendants in her lawsuit treated her in a manner that is arbitrary, capricious or in bad faith. The plaintiff took full advantage of the university's three-tiered review process for students such as herself who had not successfully passed the preliminary examination. The plaintiff's allegations of misconduct on the part of the individual professor defendants would necessarily lead one to reach a conclusion that there was a conspiracy to fail the plaintiff by each and every professor who evaluated her academic performance. The record does not support such a conclusion. On the contrary, we find that the record supports the trial court's ruling that as a matter of law, the individual defendants were entitled to judgment on counts I and II, which alleged breach of express or implied contract.

We hold that the trial court's decision to grant summary judgment in favor of Loyola on counts I and II of the plaintiff's complaint was reasonable and supported by the record and we

therefore affirm that decision.

The next issue that the plaintiff raises on appeal is whether the trial court abused its discretion in denying her motion for leave to file a sixth amended complaint. Amendments to pleadings are allowed on just and reasonable terms at any time before final judgment. 735 ILCS 5/2-616(a) (West 2008). We note that the decision whether to allow or deny an amendment is a matter of the trial court's discretion, which we will not reverse absent a showing of an abuse of that discretion. *In re Estate of Hoover*, 155 Ill. 2d 402, 416, 615 N.E.2d 736, 742 (1993). In determining whether a trial court abused its discretion, we weigh the following factors: (1) whether the proposed amended complaint would cure defective pleadings; (2) whether the amendment would surprise or prejudice the opposing party; (3) whether the amendment was timely filed; and (4) whether the movant had previous opportunities to amend. *Id.*

The plaintiff urges that evidence discovered after portions of her fifth amended complaint were dismissed provided support for two new causes of action which she should have been allowed to add to her complaint. In her proposed sixth amendment, she added the fact that because she was an employee of the university, as proved by her W-2 statements, she was in a category recognized by the courts to bring a defamation *per se* action.[4] The plaintiff also proposed to include in her sixth amended complaint, a count accusing the individual defendants of holding her out to the public in a false light. Her proposed complaint states that the individual defendants acted with malice in making false and defamatory statements, which the defendants knew were false, or were said by the

---

[4]In light of our ruling on the plaintiff's issue related to the dismissal of count IV pursuant to section 2-615, this argument as it relates to defamation *per se* is moot.

defendants in reckless disregard for whether the statements were true or false. These statements, the plaintiff alleged, placed her "in a false light before the public, including her fellow students, employees and professors at the University."

Our review of the record does not support the plaintiff's argument that the trial court abused its discretion in denying the plaintiff leave to file a sixth amended complaint. The plaintiff's original complaint was filed in 2003 and five prior amendments had been allowed by the trial court over more than six years by the time the trial court denied yet another amendment in 2009. Certainly over the course of more than six years, all of the facts and circumstances that the plaintiff sought to add to a sixth amended complaint could and should have been discovered and included if they were as crucial as the plaintiff now implies. Therefore, the trial court was well within its authority in denying the plaintiff leave to file yet another version of the complaint. Accordingly, we hold that the trial court did not abuse its discretion in denying the plaintiff leave to file a sixth amended complaint.

The next issue raised by the plaintiff is that trial court erred in denying her motion to reconsider a prior order dismissing, as moot, her claim for injunctive relief. On September 13, 2005, the trial court granted the defendants' section 2-615 motion to strike the plaintiff's request for injunctive relief. The plaintiff repled her request, which was dismissed on February 10, 2006. On December 8, 2009, when the court ruled on the remaining motions in the case, the court denied, as moot, the plaintiff's request to reconsider this decision. We review *de novo* a trial court's denial of a motion to reconsider based upon the trial court's application of existing law. *Muhammad v. Muhammad-Rahmah*, 363 Ill. App. 3d 407, 415, 844 N.E.2d 49, 56 (2006).

On appeal, the plaintiff requests that her cause be remanded to the trial court to determine the

practicality of her reinstatement into the Ph.D. program at the university so that she can pursue the appropriate course of study. She claims she is entitled to additional equitable relief, even if reinstatement into the Ph.D. program is not feasible.

A plaintiff alleging wrongful dismissal from a private university based upon an academic decision is not entitled to injunctive relief unless the following is established: (1) the plaintiff has a clear legal right that should be protected; (2) there is no adequate legal remedy; and (3) irreparable harm will result without the injunctive relief. *Bilut*, 269 Ill. App. 3d at 132, 645 N.E.2d at 540-41.

The plaintiff argues that "[w]here a student has met all requirements to receive a degree, that student is entitled to a judicial determination to this effect. *** The plaintiff [further asserts that she] has established that she met all the requirements to be a Ph.D. candidate pursuant to [Loyola's] applicable rules and guidelines." We disagree. The record does not support the plaintiff's argument that she met all of the requirements to be a Ph.D. candidate. While she disputes the propriety of her first failure of the preliminary examination, it is clear that she failed to pass the second preliminary examination after being given another opportunity to do so. Further, there is nothing in the record nor has the plaintiff pled sufficient facts to establish that the defendants acted arbitrarily, capriciously or in bad faith in derogation of a clear legal right which she had. Thus the plaintiff has not demonstrated that she is entitled to injunctive relief. Therefore, we hold that her prayer for injunctive relief was properly dismissed by the trial court.

The next issue which the plaintiff raises is whether the trial court erred in dismissing the count

for defamation *per se* by the individual professor defendants.[5] The plaintiff includes this issue in her opening brief before this court under the heading entitled: "I. The Trial Court Incorrectly Granted Defendants' Motion for Summary Judgment - C. The Plaintiff's Defamation *Per Se* Cause of Action is Supported by the Evidence." However, as discussed previously, the record discloses that this count was disposed of on February 10, 2006, when the trial court granted the defendants' motion to dismiss it pursuant to a motion brought under section 2-615 of the Code, not on a motion for summary judgment. The court's dismissal of count IV pursuant to section 2-615 remained in effect until the entire case was disposed of in December 2009. Thus, on appeal, the plaintiff has mislabeled the vehicle by which the trial court dismissed count IV of her fifth amended complaint. The defendants argue that the plaintiff has forfeited her right to this court's consideration of this issue because she makes an erroneous argument under an erroneous heading. We remind the parties that forfeiture is a limitation on the parties, not the court. *In re Atul R.*, 382 Ill. App. 3d 1164, 1169, 890 N.E.2d 695, 699 (2008). Further, it is the defendants who originally chose the vehicle by which to seek dismissal of count IV of the fifth amended complaint. Therefore, we examine the trial court's grant of the defendants' motion to dismiss count IV pursuant to section 2-615. We do not review it under the standard required for a motion for summary judgment as the plaintiff incorrectly labels and asserts in her argument.

A court of review must determine whether the trial court correctly granted a section 2-615

---

[5]The trial court also granted the defendants' motion for summary judgment on plaintiff's count V alleging defamation *per quod* in its final ruling, however, the plaintiff has not contested this ruling in her appeal.

motion to dismiss when the allegations of the complaint are viewed in the light most favorable to the plaintiff. *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 586, 814 N.E.2d 585, 588 (2004). The standard of review is *de novo*. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 571, 778 N.E.2d 1153, 1161-62 (2002). A motion to dismiss based upon section 2-615 admits all well-pled facts as true, but attacks the legal sufficiency of the complaint. *Id.* at 571-72, 778 N.E.2d at 1162. A motion brought under this section attacks only defects on the face of the complaint and is based solely upon the pleadings instead of proof of the underlying facts. *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 323, 708 N.E.2d 441, 446 (1999).

In order to sustain an action for defamation *per se*, a plaintiff must allege that a defendant made a false statement about the plaintiff; that there was an unprivileged publication of the statement to a third party; and that the plaintiff was damaged. *Id*. at 323, 708 N.E.2d at 446-47. To satisfy the *per se* rule, an allegation of defamation *per se* must fit into one of four categories: (1) words that allege the plaintiff has committed a crime; (2) words that infer that the plaintiff is infected with a loathsome, communicable disease; (3) words that impute an inability to perform or lack of integrity regarding the plaintiff's office or employment duties; and (4) words that prejudice the plaintiff or allege lack of ability in his or her trade, profession or business. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10, 607 N.E.2d 201, 206 (1992).

In the instant case, the defendants' motion to dismiss count IV of the plaintiff's fifth amended complaint, which alleged defamation *per se*, was premised upon section 2-615. As stated, it is well-settled law that all motions to dismiss which are premised on section 2-615, necessarily require that all well-pled facts are accepted as true for purposes of the motion.

19

Our review of the plaintiff's fifth amended complaint leads us to conclude that she has well pled a defamation *per se* claim in count IV. The plaintiff alleged that "according to the custom and practice of the scientific profession, [she] is considered as a member of the profession, having co-authored a peer-reviewed scientific publication." She alleged that the PEC published defamatory statements about her in an October 17, 2002, letter wherein they stated that her qualifying examination contained "a number of instances of plagiarism," that "plagiarism had occurred," that "[plaintiff's] acts of plagiarism [are] unethical," and "raise serious concerns as to whether she actually understands the topics she is writing about." This letter was sent to the steering committee, to the hearing panel and to the university.

The plaintiff further alleged in count IV that the defendants made statements to other faculty and students at Loyola asserting that she had engaged in plagiarism and unethical conduct and that she did not understand the subject matter of her area of study. The plaintiff alleged that the publication of these statements included, but were not limited to, one of the professors telling his technician that she had committed plagiarism.

The plaintiff also referred to a "Secret Memorandum," or the undated critique of her research proposal, authored by individual defendant professor Driks that the plaintiff asserts was republished to the steering committee. The plaintiff alleged that this memorandum and the October 2002 letter were put into her student file, where they were subject to republication in response to inquiries regarding employment and education applications. The plaintiff further claimed that she has been compelled to republish the false allegations while seeking employment. As a result of the alleged defamation *per se*, the plaintiff alleged her academic career in molecular biology and related scientific

fields has been destroyed. Further, she claimed that she has lost present and future educational and economic opportunities. The plaintiff claimed that she has been denied admission to every law school to which she has applied because during the application process she was forced to disclose the defendants' false and defamatory statements.

In its February 2006 ruling on the defendants' motion to dismiss count IV pursuant to section 2-615, the trial court agreed with the defendants' argument. The defendants argued that the plaintiff failed to assert facts that explain how a graduate student who had not yet attained professional status fell within one of the four categories required to establish defamation *per se*. The court rejected the plaintiff's argument that co-authoring a scientific article made her a member of the scientific profession. The trial court therefore dismissed the plaintiff's defamation *per se* count of her complaint. We note that the defendants did not raise an affirmative defense in response to this count nor did the court make a finding that the facts were not wellpled. Rather, the defendants premised their motion to dismiss on section 2-615, which requires the trial court to accept wellpled factual allegations as true. The defendants simply relied on their assertion wherein they denied that the plaintiff was a professional as she claimed. It is well settled that the defendants' response was insufficient to dismiss count IV pursuant to section 2-615.

We conclude that the trial court erred in granting the defendants' section 2-615 motion to dismiss count IV of the plaintiff's complaint, which alleged defamation *per se*. The wellpled factual allegation that the plaintiff is a member of the scientific profession must be viewed in the light most favorable to the plaintiff and accepted as true for purposes of the motion. See, *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499, 911 N.E.2d 369, 373 (2009). Accordingly, the trial court erred

when it rejected this statement of fact within the context described and granted the defendants' motion to dismiss based on section 2-615. For this reason, we must reverse the dismissal of count IV of the plaintiff's fifth amended complaint which alleged defamation *per se*. We remand the case to the trial court for further proceedings consistent with this ruling. In so ruling, we strictly adhere to established legal principles and offer no opinion as to the ultimate procedural or actual viability of this count.

For the reasons stated, we affirm the ruling of the circuit court of Cook County that dismissed counts I and II of plaintiff's complaint, which sounded in breach of express and implied contract. We affirm the ruling that denied the plaintiff leave to file a sixth amended complaint. We affirm the ruling that denied the plaintiff's motion to reconsider her request for injunctive relief. We reverse the circuit court's grant of the defendants' section 2-615 motion to dismiss count IV of the plaintiff's fifth amended complaint, which alleged defamation *per se*. We remand this cause to the circuit court for further proceedings consistent with this ruling with respect to count IV of the fifth amended complaint.

Affirmed in part and reversed in part; cause remanded.