# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Seitz-Partridge v. Loyola University of Chicago*, 2013 IL App (1st) 113409

---

| | |
|---|---|
| Appellate Court Caption | JEANINE SEITZ-PARTRIDGE, Plaintiff-Appellant and Cross-Appellee, v. LOYOLA UNIVERSITY OF CHICAGO, ALAN WOLFE, ADAM DRIKS, ALLEN FRANKFATER, GAYATRI VEDANTAM, and DAVID KEATING, Defendants-Appellees and Cross-Appellants. |
| District & No. | First District, First Division<br>Docket No. 1-11-3409 |
| Filed | March 4, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Based on plaintiff's failure to present a factual basis supporting her claim for defamation *per se* against defendant university and members of its preliminary examination committee in a graduate student program founded on statements made concerning her failure of her examination due to plagiarism, the entry of summary judgment for defendants was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-6506; the Hon. Marcia Maras, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Strauss & Malk, LLP, of Northbrook (Gary P. Hollander and Elizabeth H. Riddle, of counsel), for appellant. |
| | |
| | Francek Radelet, P.C., of Chicago (Scott L. Warner and Abrizer Zanzi, of counsel), for appellees. |
| | |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
| | Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion. |

## OPINION

¶ 1      This appeal arises from the October 19, 2011 order entered by the circuit court of Cook County granting summary judgment in favor of the defendants, Alan Wolfe (Dr. Wolfe), Adam Driks (Dr. Driks), Allen Frankfater (Dr. Frankfater), Gayatri Vedantam (Dr. Vedantam), and David Keating (Dr. Keating), and against the plaintiff, Jeanine Seitz-Partridge on a claim of defamation *per se*. On appeal, the plaintiff argues that the circuit court erroneously granted summary judgment in the defendants' favor. On cross-appeal, the defendants argue that the circuit court erroneously struck certain statements from their supplemental affidavits for failing to disclose the information pursuant to Illinois Supreme Court Rule 213(f)(1) (eff. July 1, 2002). For the following reasons, we affirm the judgment of the circuit court of Cook County as to the summary judgment ruling and find that the issue of the circuit court striking of the supplemental affidavits is moot.

¶ 2      BACKGROUND

¶ 3      This case has a long and complex factual and procedural background, and thus, our recitation of the facts is limited to those facts that are pertinent to our resolution of this appeal.[1] In 2000, the plaintiff, Jeanine Seitz-Partridge, was a graduate student in the molecular biology program at Loyola University of Chicago (Loyola). As part of the requirements to continue in the program as a Ph.D. candidate, the plaintiff was given a preliminary examination in 2002. The preliminary examination required the plaintiff to write a grant proposal and present an oral defense of her proposal to the preliminary examination committee (PEC). Members of the PEC consisted of Drs. Wolfe, Driks, Vedantam, Keating,

---

[1]A more extensive reproduction of the factual background is set forth in this court's March 31, 2011 opinion, which, *inter alia*, reversed the dismissal of the plaintiff's defamation *per se* claim. See *Seitz-Partridge v. Loyola University of Chicago*, 409 Ill. App. 3d 76, 948 N.E.2d 219 (2011).

and Frankfater, who was the chairperson of the PEC. At the conclusion of the preliminary examination, the PEC directed the plaintiff to revise a portion of her written grant proposal, known as "Aim 2." Thereafter, the plaintiff revised the "Aim 2" section of her grant proposal and resubmitted it to the PEC. Subsequently, however, Dr. Vedantam, as a PEC member, accused the plaintiff of plagiarism and brought her accusation to the attention of other PEC members. According to Dr. Vedantam's affidavit, in reviewing the plaintiff's revised written grant proposal, Dr. Vedantam noticed that "not merely phrases, but substantial portions of paragraphs were copied from original scientific articles without quotation marks and sometimes without attribution." According to Dr. Frankfater, members of the PEC then met and reviewed the plaintiff's revised written grant proposal "as compared to original articles previously published in scientific journals." The PEC then concluded that plagiarism had occurred and that the plaintiff's conduct raised concerns as to whether the plaintiff actually understood the topic about which she had written; and they then determined that as a result, the plaintiff had failed the preliminary examination. However, the PEC did not determine whether the plaintiff's plagiarism was intentional.

¶ 4 In a letter dated October 17, 2002, Dr. Frankfater informed Manuel Diaz (Dr. Diaz), who was the chairperson of the molecular biology steering committee (the Steering Committee), of the PEC's decision to fail the plaintiff on her preliminary examination. Attached to the letter was a copy of the plaintiff's preliminary examination and the relevant articles used to compare her work, as well as a written critique prepared by Dr. Driks regarding the plaintiff's preliminary examination. The Steering Committee was responsible for reviewing academic misconduct and issues of academic probation, failure, and student discipline.

¶ 5 In a letter dated October 25, 2002 to Dr. Frankfater, following the Steering Committee's independent review of the information provided by the PEC, Dr. Diaz explained the Steering Committee's conclusion that the plaintiff's conduct constituted plagiarism, but that it could not ascertain whether the plaintiff committed plagiarism "with the intent to deceive." The letter also noted the Steering Committee's determination that the plaintiff had failed the preliminary examination and that the plaintiff should be afforded a second opportunity to take the preliminary examination on a different question to determine her eligibility to continue in the Ph.D. program.

¶ 6 In November 2002, the plaintiff took a second preliminary examination. After review, the PEC unanimously determined that the plaintiff failed both the written and oral portions of the second preliminary examination. The PEC then informed the Steering Committee of its decision to fail the plaintiff and submitted the PEC members' individual critiques of the plaintiff's second preliminary examination.

¶ 7 In March 2003, the Steering Committee agreed with the PEC's conclusions and recommended that the plaintiff be dismissed from the program. On March 27, 2003, associate dean of Loyola's graduate school, Frederick Wezeman (Associate Dean Wezeman), informed the plaintiff that she was dismissed from the Ph.D. program, effective April 1, 2003. The plaintiff then engaged in a three-tier appeal procedure to Loyola's hearing board; dean of Loyola's graduate school, William Yost (Dean Yost); and Loyola's vice president of health sciences, Dr. Anthony Barbato (Dr. Barbato)–all of whom upheld the decision to dismiss the plaintiff from the program.

¶ 8        In 2003, the plaintiff filed a lawsuit against Loyola and the members of the PEC–Drs. Wolfe, Driks, Frankfater, Vedantam and Keating. The complaint was amended multiple times. In the fifth amended complaint, the plaintiff alleged causes of action for breach of express contract (count I), breach of implied-in-fact contract (count II), tortious interference with contractual relationship (count III); defamation *per se* against the individual PEC members (count IV), and defamation *per quod* (count V). Count IV of the fifth amended complaint specifically alleged that the defendants made false and defamatory statements in the October 17, 2002 letter by stating that the plaintiff had committed plagiarism; that those statements were published to the Steering Committee, faculty members, students and technicians at Loyola; that the defendants published a false and defamatory "[s]ecret [m]emorandum" for the purpose of destroying the plaintiff's professional reputation; that the defamatory statements "insinuate[d] that [the plaintiff] [was] dishonest, unethical, and professionally incompetent"; and that the false and defamatory statements destroyed the plaintiff's academic career, harmed her personal and professional reputation, and resulted in "lost present and future educational and economic opportunities, and lost substantial future income."

¶ 9        On February 10, 2006, the circuit court, presided over by Judge Allen Goldberg (Judge Goldberg), granted the defendants' motion to dismiss with prejudice, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)), the plaintiff's claims for tortious interference with contractual relationship (count III) and defamation *per se* (count IV), as set forth in the fifth amended complaint. The circuit court also granted the defendants' motion to strike the plaintiff's request for injunctive relief. Subsequently, the plaintiff engaged in further discovery by deposing various Loyola professors. The plaintiff then filed a motion for partial summary judgment on her request for injunctive relief, a motion to reconsider the circuit court's order striking her request for injunctive relief, and a motion for leave to file a sixth amended complaint.

¶ 10       On December 8, 2009, six years after the plaintiff's initial complaint was filed, the circuit court, presided over by Judge Daniel Pierce (Judge Pierce), granted the defendants' motion for summary judgment (735 ILCS 5/2-1005 (West 2008)) on the claims for breach of express contract (count I), breach of implied-in-fact contract (count II) and defamation *per quod* (count V) as alleged in the fifth amended complaint. The circuit court also denied, as moot, the plaintiff's motion for partial summary judgment on her request for injunctive relief; denied, as moot, the plaintiff's motion to reconsider the circuit court's previous order striking her request for injunctive relief; and denied the plaintiff's request for leave to file a sixth amended complaint.

¶ 11       On appeal, this court affirmed the circuit court's 2009 decision to grant summary judgment in favor of the defendants on counts I and II, to deny the plaintiff leave to file a sixth amended complaint and to deny the plaintiff's motion to reconsider her request for injunctive relief.[2] *Seitz-Partridge*, 409 Ill. App. 3d at 91, 948 N.E.2d at 233. However, this

---

[2]In the first appeal, the plaintiff did not contest the circuit court's order granting summary judgment in favor of the defendants on the cause of action for defamation *per quod* (count V).

court reversed the circuit court's 2006 decision to dismiss the defamation *per se* (count IV) claim with prejudice, finding that the well-pled allegations of the claim sufficiently met the threshold to state a cause of action for defamation *per se*. *Id.* at 90-91, 948 N.E.2d at 233. This court then remanded the case for further proceedings with respect to the defamation *per se* count (count IV) of the fifth amended complaint. *Id.* at 91, 948 N.E.2d at 233.

¶ 12     On remand, the plaintiff did not seek any additional discovery. On August 11, 2011, the defendants filed a motion for summary judgment on the sole remaining count of defamation *per se* (count IV). On September 28, 2011, a hearing on the defendant's motion for summary judgment was held. At the hearing, the circuit court, presided over by Judge Marcia Maras (Judge Maras), struck certain portions of the supplemental affidavits of Drs. Wolfe, Driks, Frankfater, Vedantam and Keating, which the court found had not been properly disclosed to plaintiff pursuant to Illinois Supreme Court Rule 213(f)(1) (eff. July 1, 2002). The supplemental affidavits were attached as exhibits to the defendants' August 11, 2011 motion for summary judgment. With leave of court, the parties filed supplemental briefs on the doctrine of "law of the case."

¶ 13     On October 19, 2011, the circuit court granted the defendants' motion for summary judgment on the defamation *per se* count (count IV) of the fifth amended complaint. The circuit court ruled that the previous findings of the circuit court and the holding of this court were "law of the case" and barred the defamation *per se* claim as a matter of law. As a result of its decision to grant summary judgment in the defendants' favor, the court ruled that the defendants' oral motion to reconsider its September 28, 2011 ruling to strike portions of the defendants' supplemental affidavits was therefore moot.

¶ 14     On November 15, 2011, the plaintiff filed a timely notice of appeal. On November 23, 2011, the defendants filed a notice of cross-appeal pursuant to Illinois Supreme Court Rule 303(a)(3) (eff. May 1, 2007).

¶ 15                                    ANALYSIS

¶ 16     We determine whether the circuit court erred in granting summary judgment in favor of the defendants on the sole remaining count of defamation *per se* as set forth in the fifth amended complaint. Our review is *de novo*. See *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1020, 756 N.E.2d 286, 291 (2001).

¶ 17     In the case at bar, the circuit court granted summary judgment in favor of the defendants on the grounds that certain previous findings made by the circuit court, presided over by Judge Pierce in 2009, as well as those made by this court in the plaintiff's first appeal in 2011, barred the defamation *per se* claim as a matter of law under the "law of the case" doctrine. While the scope of our review on a motion for summary judgment is "limited to the record as it existed at the time the [circuit] court ruled, we are not restricted to the exact reasons the [circuit] court stated or implied in entering its order." *Id.* Rather, we find that the plaintiff's claim of defamation *per se* is defeated on the basis that the evidence presented in the record failed to create any genuine issues of material fact for the claim to survive summary judgment. See *id.* ("[w]e may affirm the [circuit] court's decision for any reason in the record, regardless of its basis for the decision").

¶ 18     The plaintiff argues that the circuit court erroneously granted summary judgment in favor of the defendants because it improperly applied the "law of the case" doctrine. She further contends that the evidence provided in the record supported each element of her defamation *per se* cause of action, and that, at the very least, a genuine issue of material fact existed to defeat summary judgment.

¶ 19     The defendants counter that the circuit court properly granted summary judgment in their favor because it appropriately applied the "law of the case" doctrine. They further contend that the court's summary judgment order should be affirmed on the separate and independent basis that the undisputed evidence in the record established that the plaintiff could not possibly prove the elements of her defamation *per se* claim against the defendants. Specifically, they maintain that the evidence precluded a finding that the statements complained of regarding the plaintiff's alleged plagiarism were false; that the statements made regarding the plaintiff's academic performance were merely opinions that could not support a defamation *per se* action; that the allegedly defamatory statements were privileged; and that the evidence established that the plaintiff did not fit within any recognized category of defamation *per se*.

¶ 20     Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). "In considering a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party." *Pielet v. Pielet*, 407 Ill. App. 3d 474, 490, 942 N.E.2d 606, 622 (2010). "The purpose of summary judgment is not to try a question of fact, but to determine whether one exists" that would preclude the entry of judgment as a matter of law. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421, 432, 781 N.E.2d 249, 254, 260 (2002). "Thus, although the nonmoving party is not required to prove his case in response to a motion for summary judgment, he must present a factual basis that would arguably entitle him to judgment." *Id.* at 432, 781 N.E.2d at 260.

¶ 21     To prove defamation *per se*, a plaintiff is required to show: (1) that the defendant made a false statement concerning the plaintiff; (2) that there was an unprivileged publication of the defamatory statement to a third party by the defendant; and (3) that the plaintiff was damaged. *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443, 451, 741 N.E.2d 669, 675 (2000). Truth is an absolute defense to defamation and true statements cannot support a claim of defamation. See *id.* "Only 'substantial truth' is required for this defense." *Id.* "While substantial truth is normally a question for the jury, where no reasonable jury could find that substantial truth had not been established, the question is one of law." *Id.* at 451-52, 741 N.E.2d at 675-76. Further, a claim for defamation *per se* must fit into one of the following categories: "(1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office of employment; and (4) words that prejudice a party, or impute a lack of ability, in his or her trade, profession, or business." *Id.* at 451, 741 N.E.2d at 675. The parties agree that only categories (3) and (4) are at issue in this case.

¶ 22     In the instant case, the plaintiff's defamation *per se* claim primarily centered around three

-6-

allegedly false and defamatory statements made by the defendants: (1) Dr. Frankfater's October 17, 2002 letter to Dr. Diaz, which stated that the plaintiff had committed plagiarism; (2) a written critique prepared by Dr. Driks, which was attached to the October 17, 2002 letter, regarding the plaintiff's preliminary examination; and (3) a telephone conversation between Dr. Frankfater and Dr. Diaz during which Dr. Diaz was told that the PEC had determined that the plaintiff "was going to fail her preliminary examination even before the plagiarism issue arose." We examine each of these statements in turn.[3]

¶ 23    In the October 17, 2002 letter, Dr. Frankfater, as chairperson of the PEC, informed Dr. Diaz of the PEC's "unanimous decision" to fail the plaintiff on her first preliminary examination. The letter further explained that the plaintiff's initial written grant proposal and oral examination revealed "deficiencies" in her "knowledge or understanding of the significance of important prior work," and that the PEC had directed the plaintiff to rewrite portions of the grant proposal–specifically, "Aim 2." The letter stated that Dr. Vedantam later observed a number of instances of plagiarism in the plaintiff's revised "Aim 2" section and brought it to the attention of the PEC. The letter expressed that members of the PEC met, reviewed the plaintiff's revised "Aim 2" section, and concluded that plagiarism had occurred when the PEC discovered that "[n]ot merely phrases, but substantial portions of paragraphs were copied [from reference articles] without quotation marks and sometimes without attribution." The letter also noted that since the PEC meeting, "examples of plagiarism in [the plaintiff's] first proposal have also become known," and that the plaintiff's acts of plagiarism raised "serious concerns as to whether she actually [understood] the topics she [was] writing about."

¶ 24    The record reveals that, under Loyola's student handbook, the term "plagiarism" is defined as follows in the section entitled "Statement on Academic Honesty":

"*Papers*. Plagiarism is the appropriation of gain of ideas, language or work of another without sufficient public acknowledgment that the material is not one's own. The following acts are regarded as such violations:

– Submitting another person's unpublished work or examination as one's own;

– Submitting a rewritten or paraphrased version of another person's work ***."

¶ 25    It is undisputed that written portions of the plaintiff's preliminary examination contained direct texts from scientific reference articles without the use of quotation marks and, at times, without proper attribution. In the plaintiff's discovery deposition, she acknowledged that portions of her written grant proposal that were copied from other reference articles did not contain any quotation marks. Further, when asked during the plaintiff's deposition as to whether information in two paragraphs of her written grant proposal derived from another author's prior work, the plaintiff acknowledged that the paragraphs were "missing citation" to a scientific article authored by "Judson and Mekalanos." Although the plaintiff testified in her deposition as to her understanding that no quotations marks were needed in copying

---

[3]The statements complained of relate to the plaintiff's performance on the *first* preliminary examination. The plaintiff makes no arguments regarding any alleged statements made by the defendants regarding her performance on the *second* preliminary examination.

direct texts from reference articles, so long as she at least changed one minor word of the copied sentence in her written work, we find that she had not raised a genuine issue as to whether she had committed plagiarism under the terms of Loyola's student handbook. A comparison of the written grant proposal of the preliminary examination with the scientific article authored by "Judson and Mekalanos," as contained in the record, reveals that the plaintiff's written work copied verbatim parts of the published article without making any changes to the copied sentences, and without using quotations marks or proper citations to the article. Thus, we find that no reasonable jury could find that portions of the plaintiff's written grant proposal did not constitute plagiarism under Loyola's student policies.

¶ 26    The plaintiff further argues that accusations that she had committed plagiarism were false because her actions were "unintentional" and that there was, at the very least, a genuine issue of material fact as to whether Loyola's definition of plagiarism required the element of intent. We reject this argument. The plain language of Loyola's student handbook makes no mention of the element of "intent" in defining what actions constitute plagiarism. Although the plaintiff, as the nonmovant to summary judgment proceedings, need not prove her case, she must "provide some factual basis that would arguably entitle [her] to judgment under the law." *Kane v. Motorola, Inc.*, 335 Ill. App. 3d 214, 223, 779 N.E.2d 302, 310 (2002). Here, the evidence in the record is clear that neither the PEC nor the Steering Committee determined whether the plaintiff's conduct was intentional. Rather, the plaintiff's purported evidence that she was falsely accused of plagiarism was based on self-serving statements in her deposition testimony implying that her actions were unintentional. Because the plaintiff's attempts to create a genuine issue of material fact–whether intent was a requisite element of Loyola's definition of plagiarism–were based on assertions unsupported by the record, we find that the plaintiff's argument that she was falsely accused of plagiarism on this basis must fail. See *id.* (citing *Davis v. Times Mirror Magazines, Inc.*, 297 Ill. App. 3d 488, 497-98, 697 N.E.2d 380, 387 (1998) (finding that summary judgment was proper where plaintiff's attempts to create genuine issues of material fact were "based on assertions unsupported in the record and conclusory, self-serving deposition testimony")).

¶ 27    Next, we examine a written critique prepared by Dr. Driks, which was attached to the October 17, 2002 letter, regarding the plaintiff's first preliminary examination. The plaintiff argues that she was defamed by the false statements in the written critique. Specifically, she contends that the written critique "falsely criticized elements of [her] preliminary examination that the [PEC] had actually found to be acceptable, and in some instances exemplary."

¶ 28    The written critique, which was prepared by Dr. Driks, specified concerns regarding the original portions and revised "Aim 2" section of the plaintiff's first preliminary examination. It stated that "[o]ne of the most significant concerns regarding the document is the overall lack of sufficient rationale for the proposed experiments." The written critique noted that the introduction contained "superfluous information" and that it "[did] a poor job of explaining plasmid segregation." With regard to the "Aim 1" section, the written critique stated that the "rationale for the replisome experiments [was] insufficient." With regard to the "Aim 2" section, the written critique noted that the rationale was "not clear," and that the approach was "impractical" and "show[ed] a lack of familiarity with the methods used to screen

conditional mutants for loss of a desired cellular function." The written critique further specified that the proposed experiments were "conceptually flawed" and the rationale behind them was "not sufficient." With regard to the *revised* "Aim 2" portion of the preliminary examination, the written critique remarked that it contained information that was "largely irrelevant," that was "not a logical way to proceed," and that "[did] not make sense."

¶ 29    In defamation actions, statements that are capable of being proven true or false are actionable, whereas opinions are not. *Moriarty v. Greene*, 315 Ill. App. 3d 225, 233, 732 N.E.2d 730, 739 (2000). "While in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law." *Wynne*, 318 Ill. App. 3d at 452, 741 N.E.2d at 676. The test for determining whether an allegedly defamatory statement of opinion is actionable is "whether the statement contains an objectively verifiable assertion." *Id.* Whether a statement is an opinion or a factual assertion is a question of law. *Brennan v. Kadner*, 351 Ill. App. 3d 963, 969, 814 N.E.2d 951, 957 (2004).

¶ 30    Based on our review of the record, we find that the statements made in the written critique were nonactionable opinions relating to the plaintiff's performance on the first preliminary examination. The written critique contained a number of statements that were incapable of being proven true or false, such as that the plaintiff's preliminary examination lacked "sufficient rationale," was "not clear," and was "impractical," "conceptually flawed" and illogical. Further, it is well established in Illinois that academic evaluations and decisions are not subject to judicial review. See *Harris v. Adler School of Professional Psychology*, 309 Ill. App. 3d 856, 859, 723 N.E.2d 717, 720 (1999) (breach of contract claims brought by dismissed graduate school students against the school were not justiciable, where the claims "would require a judicial determination [on] whether the qualifying examination examined plaintiffs on appropriate subject matter"); *Bilut v. Northwestern University*, 269 Ill. App. 3d 125, 134, 645 N.E.2d 536, 542 (1994) (courts are ill-equipped to run private colleges and universities, which "must be accorded a generous measure of independence and autonomy with respect to the establishment, maintenance, and enforcement of academic standards"); *Knight v. Board of Education of Tri-Point Community Unit School District No. 6J*, 38 Ill. App. 3d 603, 607, 348 N.E.2d 299, 302 (1976) (there is no justification for court intervention "[w]here a grade is dispensed by a teacher within that teacher's subjective discretion"). Thus, we find that the statements contained in the written critique were nonactionable opinions relating to the plaintiff's performance on the first preliminary examination and that those statements involved academic evaluations by professors at Loyola. As such, they are not subject to judicial review.

¶ 31    Nonetheless, the plaintiff argues that the statements made in the written critique "falsely criticized elements of [her] preliminary examination that the [PEC] had actually found to be acceptable, and in some instances exemplary." Specifically, the plaintiff points to paragraph 15 of her affidavit, in which she attested that the written critique contained fabrications and omitted key information; that it criticized portions of her work that the PEC "had complimented [her] on and found to be competently prepared"; that it omitted any reference to the fact that the PEC had "found [she] had passed the oral defense by showing a thorough

understanding of the topic of [her] grant proposal"; and that it omitted any reference to the fact that "every member of [the PEC] had determined [her] preliminary examination was competently completed and that [she] was going to receive a passing grade." Paragraph 67 of the fifth amended complaint also alleged that the written critique contradicted the fact that the PEC had "previously passed Aim 1 unconditionally"; that the PEC had "considered and specifically approved" the rationales of her proposed experiments; that Dr. Driks had remarked during the plaintiff's oral defense that she had a "great experiment"; and that the written critique falsely attacked her methodologies and other proposed experiments.

¶ 32        Based on our review of the record, we find that the plaintiff's self-serving and conclusory assertions were unsupported by the record and failed to raise a genuine issue as to whether statements made in the written critique were false. See *Kane*, 335 Ill. App. 3d at 223, 779 N.E.2d at 310 (citing *Davis*, 297 Ill. App. 3d at 497-98, 697 N.E.2d at 387 (finding that summary judgment was proper where plaintiff's attempts to create genuine issues of material fact were "based on assertions unsupported in the record and conclusory, self-serving deposition testimony")). It is undisputed in the record that at the conclusion of the plaintiff's first preliminary examination, the PEC directed her to revise the unsatisfactory "Aim 2" section of her grant proposal. Thereafter, the plaintiff complied and resubmitted the revised "Aim 2" section to the PEC for review.

¶ 33        We find nothing in the record to support the plaintiff's bald assertion in her supplemental affidavit that after revising "Aim 2" of the grant proposal, Drs. Wolfe and Frankfater informed her that she had passed the preliminary examination. Rather, the record shows that, in reviewing the plaintiff's revised grant proposal, Dr. Vedantam discovered instances of plagiarism and brought it to the attention of the PEC, which later unanimously determined that the plaintiff had failed the first preliminary examination. There is nothing in the record to show that the PEC had officially given the plaintiff a passing grade on the preliminary examination. Rather, as the plaintiff acknowledged in her supplemental affidavit and deposition testimony, she was "unable to get signatures" of certain PEC members, after revising her grant proposal, to evidence that she had passed the preliminary examination. We further find that even assuming that Dr. Driks had in fact complimented the plaintiff on a "great experiment" during her oral defense, or that the PEC "considered and specifically approved" the rationales of her proposed experiments, no reasonable jury could find that these circumstances supported the plaintiff's assertion that the PEC ultimately gave her a passing grade on the preliminary examination. Rather, once the PEC determined that the plaintiff had committed plagiarism, it only made one final and official decision to fail the plaintiff on her preliminary examination, and informed the Steering Committee of its decision. Likewise, even if the PEC had determined that plaintiff had "previously passed Aim 1 unconditionally," as the plaintiff asserts, no reasonable jury could find that the passage of a single portion of the preliminary examination conferred upon the plaintiff an ultimate passing grade, nor could it undercut the undisputed fact that the PEC found the "Aim 2" section to be unsatisfactory and directed the plaintiff to revise it. Thus, we find that the plaintiff had not raised a genuine issue of material fact regarding whether the statements in the written critique were false.

¶ 34        Next, we examine the plaintiff's claim that during a 2002 telephone conversation

between Dr. Frankfater and Dr. Diaz, Dr. Diaz was falsely informed that the PEC had determined that the plaintiff "was going to fail her preliminary examination even before the plagiarism issue arose."

¶ 35     According to Dr. Diaz's deposition testimony, prior to receiving the October 17, 2002 letter from Dr. Frankfater, he received a telephone call from Dr. Frankfater during which they discussed the PEC's decision to fail the plaintiff. Dr. Frankfater informed Dr. Diaz that the PEC had found the plaintiff's written grant proposal to be "insufficient" and that "there was discovery of plagiarism in the document." Dr. Diaz further testified that Dr. Frankfater explained to him that the PEC "decided that the document was not up to the standards, that the [PEC] considered it unnecessary to pass" the plaintiff. Based on our review of Dr. Diaz's deposition testimony, we find that no reasonable jury could conclude that it supported the plaintiff's assertion that the statements made in the telephone conversation at issue falsely stated that the plaintiff was "going to fail her preliminary examination even before the plagiarism issue arose." Rather, Dr. Diaz testified only that the plaintiff's written grant proposal was "insufficient," which was supported by indisputable evidence in the record that the PEC, after the plaintiff's oral defense of the first preliminary examination, directed the plaintiff to revise certain portions of the grant proposal which the PEC found to be unsatisfactory. The plaintiff's arguments seem to stem from her repeated claims that she was informed by the PEC that she had "passed" the first preliminary examination before any accusations of plagiarism had been made against her. However, as discussed, the evidence provided no support for this assertion and no reasonable jury could find, based on the evidence, that the PEC issued any official decision to pass the plaintiff either before or after she revised the "Aim 2" section of the first preliminary examination. Thus, viewing the record in the light most favorable to the plaintiff, we hold that no genuine issues of material facts existed as to whether the defendants made false statements concerning the plaintiff. Therefore, the plaintiff cannot prove an essential element–false statements by the defendants–of the defamation *per se* claim. Accordingly, the circuit court properly granted summary judgment in favor of the defendants.

¶ 36     We further find that the plaintiff cannot prove a claim for defamation *per se* because no reasonable jury could find that the claim fit within one of the four categories established by Illinois law, including "(3) words that impute an inability to perform or want of integrity in the discharge of duties of office of employment; and (4) words that prejudice a party, or impute a lack of ability, in his or her trade, profession, or business." *Wynne*, 318 Ill. App. 3d at 451, 741 N.E.2d at 675. As discussed, the parties agree that only categories (3) and (4) are at issue in this case.

¶ 37     Viewing the record in the light most favorable to the plaintiff, we cannot say that any of the statements complained of by the plaintiff fit into either category at issue. We find that, even assuming, *arguendo*, that the plaintiff could establish that she was an employee of Loyola or a member of the scientific profession, no reasonable jury could find that the allegedly false statements pertained in any way to either an office of employment or membership within a profession. Specifically, the statements complained of did not relate to any research the plaintiff performed as an assistant in Dr. Wolfe's research laboratory, nor did they relate to her contribution as a coauthor in one of Dr. Wolfe's published articles.

-11-

Rather, the allegedly false statements pertained only to the PEC's 2002 academic assessment of the plaintiff's performance on an examination as a graduate student in the molecular biology program at Loyola. The statements expressly related only to the plaintiff's written grant proposal, the PEC's discovery of plagiarism on the examination and the PEC's ultimate decision to fail the plaintiff. Thus, we find that the plaintiff has not presented a factual basis that would arguably entitle her to judgment on her defamation *per se* claim. Therefore, the circuit court properly granted summary judgment in favor of the defendants on this basis.

¶ 38    We next determine the defendants' cross-appeal claim that the circuit court erroneously struck certain statements from their supplemental affidavits for failing to disclose the information pursuant to Illinois Supreme Court Rule 213(f)(1) (eff. July 1, 2001). As discussed, on September 28, 2011, at the hearing on the defendants' motion for summary judgment on the claim of defamation *per se*, the circuit court struck certain paragraphs from the supplemental affidavits filed by Drs. Wolfe, Driks, Frankfater, Vedantam and Keating. The supplemental affidavits were attached as exhibits to the defendants' August 11, 2011 motion for summary judgment. On October 19, 2011, the circuit court granted the defendants' motion for summary judgment, and denied as moot the defendants' oral motion to reconsider the court's September 28, 2011 ruling to strike the portions at issue. On November 15, 2011, the plaintiff filed a timely notice of appeal, and on November 23, 2011, the defendants filed a notice of cross-appeal pursuant to Illinois Supreme Court Rule 303(a)(3) (eff. May 1, 2007).

¶ 39    Reviewing courts "will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions." *Condon v. American Telephone & Telegraph Co.*, 136 Ill. 2d 95, 99, 554 N.E.2d 206, 208 (1990). "Courts of review will also ordinarily not consider issues that are not essential to the disposition of the causes before them (see *Wheeler v. Aetna Casulaty & Surety Co.* (1974), 57 Ill. 2d 184, 189[, 311 N.E.2d 134, 137]) or where the results are not affected regardless of how the issues are decided (*City of Chicago v. Cohen* (1977), 49 Ill. App. 3d 342, 344[, 364 N.E.2d 335, 337], citing *Griffin v. Rausa* (1954), 2 Ill. 2d 421[, 118 N.E.2d 249])." *Id.*

¶ 40    Based on our ruling that the circuit court properly granted the defendants' motion for summary judgment on the plaintiff's defamation *per se* claim, we find this issue to be moot. Regardless of how we resolve the issue of whether the circuit court erred in striking portions of the defendants' supplemental affidavits, the outcome of this court's decision in affirming the circuit court's ruling in granting summary judgment in the defendants' favor would not be affected. Therefore, this issue is moot. See *Brazas v. Ramsey*, 291 Ill. App. 3d 104, 111, 682 N.E.2d 476, 480 (1997) (declining to reach the merits of plaintiff's moot argument that the trial court erred in refusing to strike an affidavit, where plaintiff had already secured a favorable ruling by the reviewing court and would have nothing to gain by having the affidavit stricken).

¶ 41    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 42    Affirmed.