2023 IL App (1st) 221120

SIXTH DIVISION
Filing Date June 30, 2023

No. 1-22-1120

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| LEWIS BECK, AS SOLE BENEFICIARY OF THE LEWIS BECK IRREVOCABLE TRUST, | ) ) ) | Appeal from the Circuit Court of |
| Petitioner-Appellant, | ) ) | Cook County. |
| v. | ) ) | No. 21 CH 04519 |
| DAYONE PACT and CATHERINE BECK, | ) ) ) | The Honorable Pamela McLean Myerson, |
| Respondents, | ) ) | Judge, Presiding. |
| (Catherine Beck, Respondent-Appellee). | ) | |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices C.A. Walker and Tailor concurred in the judgment and opinion.

## OPINION

¶ 1        Petitioner Lewis Beck appeals from an order of the circuit court of Cook County which

dismissed all counts of his complaint to modify his irrevocable trust with prejudice pursuant

to a section 2-615 (735 ILCS 5/2-615 (West 2020)) motion filed by Respondent Catherine

Beck.[1] On appeal, petitioner contends that the circuit court erred in determining that the trust cannot be modified as requested by petitioner. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3        This dispute concerns petitioner's Irrevocable Trust and his desire to modify some of its terms. The background of this appeal comes from the parties' pleadings and the circuit court's written order disposing of Respondent's section 2-615 motion below.

¶ 4        Petitioner initiated the Lewis Beck Irrevocable Trust (Trust) on July 3, 2008, with proceeds received from personal injury settlement funds. The Trust named petitioner as the sole current beneficiary of the Trust. DayOne Pact, formerly known as PACT, Inc., is the trustee of the Trust. Section 1.1 of the Trust indicated that petitioner did not have any children; his adoptive parents were Maureen and Robert Beck; his sisters were Maria Beck, with whom he shared birth parents, and Respondent, his adoptive sister. Additionally, petitioner had a half-sister, Joanne Menendez, with whom he shared his birth mother, and one of his nieces was Catherine Rodriguez, Maria Beck's daughter. His birth mother was Lisa Menendez. That section went on to say that "I intend by this instrument to provide for my benefit, my wife's benefit, if I marry, and my descendants' benefit, if I create any during my life, and for certain members of my family after I die."

¶ 5        There were two purposes of the Trust, as set forth in Sections 1.3 (tax purpose) and Section 1.4 (non-tax purpose).

---

[1] Respondent DayOne Pact is not a party to this appeal.

¶ 6     The tax purposes of the Trust were to give petitioner income tax attributes related to the trust, to prevent any potential gift tax issues, and to prevent distribution of the trust assets to himself or his creditors.

¶ 7     The non-tax purposes of the trust included maximizing available resources to help petitioner become self-sufficient, and to enhance petitioner's life and the lives of his dependents. Additionally, petitioner intended for the trustee to use the trust assets for anything consistent with the trust purposes including: assisting petitioner with a limited amount of seed money to start and run a business; special education and therapy; extra medical testing and independent treatment special diagnosis and care to assess the nature and progress of petitioner's condition and to permit creative experimentation with new drugs and medical treatments or therapies that the trustee, in consultation with the appropriate medical personnel, believes may have a chance of aiding recovery; special entertainment, travel or education to enhance the quality of petitioner's and his dependents' lives; vocation education, special job training and employment supports to enable petitioner to try and obtain and hold gainful employment; and any other type of supplemental goods or services, including special housing or custodial or medical care, which the trustee believes may help petitioner recover and lead a full and productive life.

¶ 8     The Trust was designated as an Irrevocable Trust in Article 2, and Section 2.1 indicated that, except as provided in Section 2.2, the Trust and any trusts established under it were irrevocable and unamendable. Section 2.2 provided that the Trust may be amended by the trustee, "with the written consent of all then-acting trust protectors," "(a) so that it fulfills and continues to fulfill the purposes set forth in Sections 1.3 and 1.4 and (b) to add trust administration provisions that the trustee considers necessary for the efficient and appropriate

administrative of the trust by a written instrument that the trustee signs and delivers to [petitioner] if living, and all of the then-acting trust protectors."

¶ 9        Article 3 of the Trust designated the trust estate as a Lifetime Trust and stated that the trustee was to administer the trust estate for his primary benefit with a monthly payment. Article 4 of the Trust concerned gifts on petitioner's death and provided that the Lifetime Trust would terminate at petitioner's death. It also stated that the trustee should allocate the Lifetime Trust not otherwise allocated under section 4.2 for gifts on petitioner's death as follows: one-third to his adoptive mother, Maureen, one-third to his adoptive father, Robert, and one-third to his adoptive sister, Respondent. Section 4.2 provided that petitioner retained a testamentary power of appointment that was exercisable only by his will making specific reference to the Trust's power of appointment, under which petitioner could direct the trustee to distribute all or any part of the Lifetime Trust only to or for the benefit of his adoptive parents, his adoptive siblings, his surviving spouse, his descendants and their respective spouses and any charity or charities.

¶ 10       Article 6, titled Contingent Gift Provision, provided that on the death of the last to die of all beneficiaries of any trust, any of the trust not otherwise distributable shall be distributed to petitioner's heirs according to the laws of descent and distribution of Illinois. That article further provided that under no circumstances was his birth mother to be considered his heir.

¶ 11       Article 11 of the trust instrument provided for two "trust protectors." Trust protectors were empowered, in a non-fiduciary capacity and without the consent or approval of the trustee, any beneficiary or other adverse party, any court or other person, at any time, to remove the trustee and appoint another trustee in its place, provided that any successor trustee was a qualified corporation. The trust protector powers were to be exercised unanimously by any co-trust

protectors. The initial trust protectors were petitioner's adoptive parents, Maureen and Robert Beck. Article 11 allowed the trust protectors to designate in writing a successor trust protector (other than petitioner, his spouse or an adverse party). That article also provided for successor trust protectors, designated as Catherine Beck, Catherine Rodriguez, and any individual appointed by the trustee or a court of competent jurisdiction. According to the Trust, the trust protector section applied only during petitioner's life, and no "adverse party"[2] could serve as trust protector. Additionally, any trust protector who became an "adverse party" must cease to serve as a trust protector under section 11.4. At the time of this appeal, the current trust protectors are Robert Beck and Catherine Beck (Respondent).[3]

¶ 12        On May 24, 2021, petitioner sent the current trust protectors a letter outlining his proposed modifications to the Trust, including a consent form for the proposed changes as required under the terms of the Trust. Petitioner proposed modifications to Articles 4 and 11 of the Trust.

¶ 13        Petitioner's proposed modifications to Article 4 would delete all of the original provisions for gifts on his death and instead simply terminate the Lifetime Trust. Further, the modification would have the trustee allocate the Lifetime Trust according to the terms of a testamentary power of appointment retained by petitioner, under which petitioner could direct the trustee to distribute all or any part of the Lifetime Trust. If petitioner did not have a valid will that allocated the assets of the Trust, the assets would be distributable under Article II of the Illinois Probate Act (755 ILCS 5/2-1 *et seq.* (West 2020)).

---

[2] The Trust indicates in its definitions section that "adverse party" has the same meaning as in 26 U.S.C.A. § 672(a) (1998)- any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercised of the power which he possesses respecting the trust.

[3] The record does not indicate what happened to Maureen Beck's status as a trust protector.

¶ 14        Additionally, petitioner proposed modifications to the trust protector section of Article 11. Petitioner sought to amend Section 11.1 so that he specifically retained the right, exercisable by a written notice delivered to the trustee and each of the then acting trust protectors, to discharge or replace any trust protector and to name a new one upon such discharge or death or resignation of trust protector. He sought to remove the power of the trust protectors to name successor trust protectors, and sought to delete the provisions naming Respondent and the other successor trust protectors.

¶ 15        Robert returned his consent to the proposed modifications to petitioner on May 31, 2021. Respondent never responded to the letter requesting her consent. On September 9, 2021, petitioner filed his Petition to Modify the Trust. On December 21, 2021, Respondent filed her Motion to Strike petitioner's petition under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)).

¶ 16        In her motion, Respondent argued that the proposed modifications to the Trust would allow the beneficiary to avoid the spendthrift provision, by giving him the sole power to remove and choose the trustee and the trust protectors. Additionally, Respondent argued that the proposed modifications did not add to either the tax or non-tax purposes of the Trust as described in Sections 1.3 and 1.4, as required by Section 2.2. Respondent also argued that the proposed modifications would be inconsistent with Trust section 2.2 which required any modification to "add trust administration provision that the trustee considers necessary for the efficient and appropriate administration of the trust." Rather, Respondent argued that the proposed modifications would change the Trust from one which has independent trustees and trust protectors to one which would be an alter ego of petitioner. Further, Respondent argued that the proposed modifications would allow petitioner to unilaterally choose to whom the *res*

would be distributed without regard to the intention to provide for her, and the proposed modifications would also allow petitioner to replace both the trustee and the trust protectors at any time, particularly whenever he did not agree with them.

¶ 17 The circuit court held oral argument on Respondent's motion and issued its written order on June 23, 2022. In its order, the circuit court first noted that at oral argument, petitioner's counsel "emphasized that this case [was] about 'Lewis Beck's money.'" The court noted that this approach "ignore[d] the implications of creating an irrevocable trust;" once created and assets were transferred to it, those assets no longer belonged to the grantor, and he could not take back the assets or deal with them in any way other than the way that the Trust provided. Respondent argued that petitioner could not modify the Trust as proposed because section 411 of the Illinois Trust Code (Code) (760 ILCS 3/411 (West 2020)) and the terms of the Trust prohibited it.

¶ 18 The circuit court concluded that, looking at the four corners of petitioner's petition, petitioner did not allege sufficient facts to state a cause of action for the modification of the Trust because both the Code and the plain language of the Trust itself did not allow the modification petitioner sought. The circuit court noted that, first, section 411(b) of the Code sets forth the circumstances under which a noncharitable irrevocable trust may be modified, specifically that it may be modified upon the consent of all beneficiaries if the court concludes that modification is not inconsistent with any material purpose of the trust. 760 ILCS 3/411(b) (West 2020). Taking as true the allegations of petitioner's petition, the court found that petitioner could not modify the Trust as requested, noting that Respondent was a contingent beneficiary and the Petition alleged that she had not consented to the modification.

¶ 19    The circuit court further noted that the Code defined beneficiary as a person that has a present or future beneficial interest in a trust, vested or contingent, assuming non-exercise of powers of appointment. 760 ILCS 3/103(A) (West 2020). Under that definition, the court concluded that petitioner was not the sole beneficiary of the Trust because Respondent had a future contingent beneficial interest in the Trust, thus she was also a beneficiary. Because Respondent had not consented to the modification of the Trust, petitioner's request for modification did not meet the first requirement of section 411(b).

¶ 20    The circuit court also found that petitioner did not meet the second requirement of section 411(b) because the proposed modifications were inconsistent with the material purposes of the Trust. The court noted that the Trust contained certain protections and oversights, including independent trust protectors; petitioner's proposed changes that would allow him to remove and replace the trust protectors at will, would remove that layer of protection. Further, the court found that allowing petitioner to freely change the Trust's testamentary provisions would let him override the Trust's express plan for distributing the remaining Trust assets upon petitioner's death. The court concluded that petitioner's proposed modifications did not meet either requirement of the Code.

¶ 21    Additionally, the court concluded that petitioner's proposed modifications did not meet the requirements of section 411(e)(2) of the Code, which provide that if all of the beneficiaries do not consent to a proposed modification or termination of the trust, the modification may be approved by the court if the court is satisfied that if all the beneficiaries had consented, the trust could have been modified or terminated under that section and the beneficiary who does not consent is treated equitably and consistent with the purposes of the trust. 760 ILCS 3/411(e)(2) (West 2020).

¶ 22    Under the Trust as written, Respondent receives one-third of the assets remaining in the Trust at its termination, and petitioner did not show how the proposed modifications would treat Respondent equitably. Modifying the Trust as petitioner proposed would allow him to disregard the Trust's intent to provide for Respondent, and allow him to replace the trustee and trust protectors for any given reason, whenever he saw fit. The court found that was not equitable to Respondent or consistent with the Trust's purposes.

¶ 23    Finally, the court concluded that the plain language of the Trust precluded petitioner's request for modification, because it provided that any modification had to be approved by both trust protectors. Additionally, the court noted that the proposed modifications did not add administration provisions nor aid in the efficient and appropriate administration of the Trust as required in section 2.2 of the Trust. Rather, the proposed modifications would make significant substantive changes, eliminate the independent trustee and trust protectors from the Trust, essentially creating an alter ego of petitioner. The circuit court granted Respondent's motion to strike petitioner's petition for modification with prejudice.

¶ 24    Petitioner filed his timely notice of appeal on July 21, 2022.

¶ 25                              ANALYSIS

¶ 26                              1. Forfeiture

¶ 27    Before we turn to our discussion of this appeal, we address Respondent's contention that because petitioner failed to provide a complete record on appeal at the time the appellant brief was filed, failed to submit a transcript or bystander's report from the April 26, 2022, hearing on Respondent's motion, and because petitioner's appendix was insufficient, we should find that petitioner forfeited any claims of error and should dismiss his appeal. We will address each of Respondent's contentions below.

¶ 28    Petitioner's notice of appeal was filed in the trial court on July 21, 2022, and transmitted to this court on August 2, 2022. The docketing statement was filed on August 9, 2022, the initial record was filed on September 20, 2022, and petitioner's opening brief was filed on October 25, 2022. Petitioner moved to supplement the appellate record on November 10, 2022, which this court granted on November 23, 2022. Respondent's responsive brief in which these allegations were raised was filed on November 29, 2022, and petitioner's reply brief was filed on December 13, 2022. This case was not ready for disposition until January 3, 2023. We find that petitioner's motion to supplement the record was timely as briefing was not completed until after the supplemental record was filed, no supplemental briefing schedule was required and Respondent was not prejudiced by the supplemental record being filed. See *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 275 (2006) (tardiness of respondent's motion to supplement would unduly prejudice petitioner).

¶ 29    With respect to petitioner's failure to include a transcript or bystander's report from the hearing on Respondent's motion to dismiss, it is the duty of every appellant in a reviewing court to provide a sufficient record to support a claim of error, and in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of a proper record, a reviewing court may dismiss the appeal, or alternately summarily affirm the judgment of the trial court. *Marx Transport, Inc. v. Air Express International Corp.*, 379 Ill. App. 3d 849, 853 (2008). However, where, as here, we are reviewing a motion to dismiss with respect to the pleadings, our review is *de novo*, and we perform the same analysis that the trial court would perform. *Taylor v. Evangelical Covenant Church*, 2022 IL App (1st) 210524, ¶ 12.  Reports of proceedings are not necessary

for effective appellate review because, under the *de novo* standard, we review the circuit court's judgment, not the reasons for its judgment. *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115 (1993). We therefore find that dismissal or summary affirmance is not necessary in this case as the issues on appeal can be resolved on the record.

¶ 30    Finally, we find Respondent's claim that the appendix contained in petitioner's opening brief was insufficient to be without merit, as it contained the notice of appeal, the circuit court's memorandum and order, the order to supplement the record from the circuit court and the table of contents to the record on appeal. Thus, we find that petitioner's appendix complied with Rule 342(a) (eff. Oct. 1, 2019). We now proceed to address the issues raised by petitioner on appeal.

¶ 31                              2. Issues Raised on Appeal

¶ 32    On appeal, petitioner contends that the Trust can be modified as he requested because Respondent is not a beneficiary of the Trust; even if Respondent was a beneficiary, the Trust could still be modified over her objection; and petitioner's proposed modifications are not inconsistent with the purposes of the Trust. We shall discuss each of petitioner's contentions in turn below.

¶ 33            3. Standard of Review and General Principles Concerning Trusts

¶ 34    This matter was before the circuit court on a section 2-615 (735 ILCS 5/2-615 (West 2020)) motion to dismiss. A motion to dismiss based on section 2-615 admits all well-pled facts as true, but attacks the legal sufficiency of the complaint. *Seitz-Partridge v. Loyola University of Chicago*, 409 Ill. App. 3d 76, 89 (2011). A motion brought under this section attacks only defects on the face of the complaint and is based solely on the pleadings instead of proof of the underlying facts. *Id.* A court of review must determine whether the circuit court correctly

granted a section 2-615 motion to dismiss when the allegations of the complaint are viewed in the light most favorable to the plaintiff. *Id*. at 88. The standard of review is *de novo*. *Id*. at 89.

¶ 35 A court's primary concern in construing a trust instrument is to discover the intent of the grantor. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). In determining that intent the court must first consider the plain and ordinary meaning of the words used and must consider the entire document. *Eychaner v. Gross*, 202 Ill. 2d 228, 256 (2002). Where the trust contains language that is unambiguous and clear, the intent must be ascertained from that language; extrinsic evidence may be admitted to aid the interpretation only if the document is ambiguous. *Stein v. Scott*, 252 Ill. App. 3d 611, 615 (1993). We review the trial court's construction of the trust instrument *de novo*. *Brown v. Ryan*, 338 Ill. App. 3d 864, 871 (2003).

¶ 36                              4. Whether Respondent is a Beneficiary of the Trust

¶ 37 Petitioner first contends that because Respondent "only attains some interest in the Trust only after the Trust has expired by its own provisions," her interest is testamentary in nature and does not result from the Trust itself, thus she is not a beneficiary of the Trust. Petitioner's brief does not cite to any caselaw in support of his argument; instead, petitioner merely cites to section 103 of the Code (760 ILCS 3/103 (West 2022)) which defines "beneficiary" to support his conclusion that Respondent has no present or future beneficial interest in the Trust because the Trust "merely sets forth the purely ministerial aspect of dealing with former trust assets after the Trust's conclusion" and does not amount to an interest in the Trust itself. He concludes that Respondent's consent to the modification desired by the "true beneficiary" is irrelevant to the determination and as the sole beneficiary of the Trust, petitioner's consent is all that is required under section 411(b) of the Code (760 ILCS 3/411(b) (West 2020)). We disagree with petitioner's conclusion.

¶ 38    Petitioner is correct that he was the primary beneficiary of the Trust and reserved the right to amend gifts on death under the Trust instrument pursuant to section 4.2. However, section 4.1 of the Trust provides that Respondent would receive one-third of the trust assets at the time of petitioner's death (along with petitioner's adoptive parents). Additionally, section 4.2 indicates that Respondent was included in the short list of persons whom petitioner could benefit under his testamentary power of appointment.

¶ 39    A power of appointment is a power granted under a deed or will authorizing the donee to dispose of an estate in a specified manner for the benefit of the donee or others, and a testamentary power of appointment is one that the donee may exercise only in his or her will. https://www.merriam-webster.com/legal/power%20of%20appointment, (accessed June 14, 2023). A power is said to be general when it is exercisable in favor of any person whom the appointee may select, and special, limited, or particular when it is exercisable only in favor of persons or a class of persons designated or described in the instrument creating the power. *BMO Harris N.A. v. Towers*, 2015 IL App (1st) 133351, ¶ 28.

¶ 40    Section 103 of the Code defines "beneficiary" as a person who has a present or future interest in a trust, vested or contingent, assuming nonexercised of powers of appointment. 760 ILCS 3/103(3)(A) (West 2020). As noted, petitioner's trust named Respondent as one of three individuals to receive one-third of the remaining assets of the trust on petitioner's death that had not been exhausted or otherwise distributed under petitioner's testamentary power of appointment. This court has previously found such remainder interests to be vested, rather than contingent because a remainder is contingent if the remainderman's identity cannot be definitely ascertained or if the remainder is conditioned on the happening of an event not certain to happen. *In re Estate of Michalak*, 404 Ill. App. 3d 75, 84 (2010). In that case, we

noted that a "vested remainder is one ready to come into possession upon the termination of the prior estate." *Id.*, quoting *Jurgens v. Eads*, 67 Ill. App. 3d 52, 57 (1978). We conclude that it is clear under the Code's definition that Respondent was indeed a beneficiary of the Trust and reject petitioner's arguments to the contrary.

¶ 41          5. Modifications Inconsistent with Trust Purposes and Modification Over Objection

¶ 42          Petitioner also contends that the circuit court wrongly found that the proposed modifications were inconsistent with the Trust's purposes because the court misconstrued the authority of the trust protectors under the terms of the Trust instrument, and cites to section 808 (760 ILCS 3/808 (West 2020))[4] of the Code as support. He argues that the Trust did not provide any authority to the trust protectors to safeguard or otherwise participate in his personal affairs as opined by the circuit court and that the proposed modifications had no effect on the listed authority of the trust protectors, thus the court erred in finding the modifications inconsistent with the Trust. Petitioner further maintains that he already retained significant ability to direct the disposition of the former Trust *res* after his death by issuing a will under section 4.2 of the Trust, which supersedes section 4.1 of the Trust. Finally, petitioner contends that the circuit court erred in misconstruing the terms of the Trust in its analysis under section 411(e) of the Code.

¶ 43          Additionally, petitioner argues that the circuit court erred in misconstruing the terms of the Trust in its analysis using section 411(e) (760 ILCS 3/411(e) (West 2020)) of the Code. He maintains that the Trust can be modified as he proposes pursuant to section 411(b) (760 ILCS

---

[4] Section 808(d) defines a trust protector and lists some authority that may be granted to a trust protector in a trust instrument. See 760 ILCS 3/808(d) (West 2020). However, this section is irrelevant to the discussion of whether petitioner can modify a noncharitable irrevocable trust, which is governed wholly by section 411 of the Code (760 ILCS 3/411 (West 2020)).

3/411(b) (West 2020)) because he is the sole beneficiary of the Trust and he consents to the modification. Petitioner argues that the court erred in finding that the proposed modifications would affect Respondent's interest as set forth in section 4.1 of the Trust, because such a finding clearly disregarded section 4.2 of the Trust, which gives petitioner a testamentary power of appointment that he could use to alter Respondent's interest. Thus, he concludes that the Trust can be modified over Respondent's objection, even if she is considered a beneficiary. We disagree.

¶ 44    The Trust at issue is an irrevocable trust. It is an established rule that a written instrument which settles a trust without expressly or impliedly reserving to the settlor the right to alter, amend, modify or revoke, creates a trust that can neither be altered, amended, modified or revoked. *Mortimer v. Mortimer*, 6 Ill. App. 3d 217, 222 (1972).

¶ 45    Here, the Trust was not modifiable as proposed by its own language in section 2.1, except as provided in section 2.2. Section 2.2 of the Trust provides that the Trust can be amended by the trustee with the written consent of all of the then-acting trust protectors so that it fulfills and continues to fulfill the tax and non-tax purposes found in sections 1.3 and 1.4; and to add trust administration provisions that the trustee considers necessary for the efficient and appropriate administration of the trust. Thus, at the time the Trust was created, petitioner's intention was that the trustee could modify the Trust with the consent of the trust protectors for only the reasons stated. Petitioner's proposed modifications did not meet the requirements of section 2.2 as they did not originate with the trustee, nor did they meet the requirements set forth in the trust instrument. We find that the plain language of the Trust defeats petitioner's proposed modification plan.

¶ 46        However, a trust agreement that does not expressly or impliedly contain provisions for revocation or modification can be revoked or modified only with the consent of all the beneficiaries, if they are in being, are *sui juris* and can consent. *Id.* That language has since been codified in section 411 of the Code, which governs the modification or termination of noncharitable irrevocable trust by consent. 760 ILCS 3/411 (West 2020).

¶ 47        Section 411 of the Code provides for modification when the beneficiaries consent as well as when the beneficiaries do not consent. Section 411(b) states that "[a] noncharitable irrevocable trust may be modified upon consent of all the beneficiaries if the court concludes that the modification is not inconsistent with any material purpose of the trust." 760 ILCS 3/411(b) (West 2020). Section 411(e) applies when the beneficiaries do not consent. Section 411(e) provides that:

> "(e) If not all the beneficiaries consent to a proposed modification or termination of the trust under subsection (a) or (b), the modification may be approved by the court if the court is satisfied that:
>
> (1) if all of the beneficiaries had consented, the trust could have been modified or terminated under this Section; and
>
> (2) a beneficiary who does not consent is treated equitably and consistent with the purposes of the trust. 760 ILCS 3/411(e) (West 2020).

¶ 48        Turning to the case at bar, if all of the beneficiaries consented to petitioner's proposed modifications, a section 411(b) analysis is applied to determine whether the Trust could be modified. Petitioner argues that this section controls because he believes that he is the only beneficiary of the trust. However, we have already determined that Respondent is a beneficiary under the Trust based on the definition of beneficiary as provided in section 103((3)(A) of the

Code. 760 ILCS 3/103(3)(A) (West 2020). Moreover, even if Respondent had consented to the proposed modifications and we applied a section 411(b) analysis, petitioner would still not be allowed to make the proposed modifications.

¶ 49     That section allows a court to modify an irrevocable trust if the court concludes that *modification is not inconsistent with any material purpose of the trust*. (Emphasis added). 760 ILCS 3/411(b) (West 2020). Our review of the proposed modifications reveal that they are significantly inconsistent with the stated purposes of the Trust.

¶ 50     As noted above, the stated intention of the Trust was to provide for petitioner's benefit, his wife's benefit, if he married, and his descendants' benefit, if he created any during his life, and for certain members of petitioner's family when he died. Respondent was one of those named family members to be provided for under the terms of the Trust after petitioner's death. In contrast, as found by the circuit court, petitioner's proposed modifications eliminated all of the gifts on death that were delineated in the original trust instrument, which includes a gift to Respondent. Additionally, the proposed modifications eliminated Respondent and Catherine Rodriguez as successor trust protectors. Although the Trust also had some tax and non-tax purposes, the intention of the Trust, as stated by the plain language used in Article 1, was to provide not only for petitioner, but for certain members of his family after his death, and certain gifts were delineated to certain family members upon his death, including to Respondent. We therefore conclude that the proposed modifications were not consistent with the material purpose of the Trust in accordance with section 411(b).

¶ 51     We also find that the circuit court did not err in concluding that petitioner could not modify the Trust under section 411(e) of the Code, which applies when all of the beneficiaries do not consent to modification. The record is clear that Respondent does not consent to the proposed

modifications, thus it is section 411(e) that must be applied in order for the modification to be approved by the court. We cannot say that the proposed modifications met the requirements of section 411(e) because neither the requirements of subsection (1) or (2) are satisfied.

¶ 52    Subsection (1) provides that the trust could be modified by the court if all of the beneficiaries had consented and the trust could be modified under this section. We have just determined that the Trust could not be modified as proposed under section 411(b) because the modifications are inconsistent with the material purposes of the Trust. Nor can subsection (2) be satisfied because the proposed modifications do not treat Respondent consistent with the purposes of the Trust. Thus, we reject petitioner's contentions that the Trust could have been modified over Respondent's objection as a beneficiary and that the proposed modifications were consistent with the material purposes of the Trust.

¶ 53    Viewing the allegations of petitioner's petition in the light most favorable to the petitioner, we conclude that the circuit court correctly granted Respondent's motion to strike petitioner's petition to modify the irrevocable trust pursuant to section 2-615 (735 ILCS 5/2-615 (West 2020)).

¶ 54                                    CONCLUSION

¶ 55    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 56    Affirmed.